**JUDGE FURMAN**



UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

----------------------------------------------------------------------- x

THE CITY OF NEW YORK,

                            Plaintiff,

                -against-

ROBERT GORDON, d/b/a ALL OF OUR BUTTS;
MARCIA GORDON; JOHN DOES 1-5, being persons
who own, are employed by or are associated with All Of
Our Butts; REGIONAL INTEGRATED LOGISTICS,
INC., d/b/a REGIONAL PARCEL SERVICES; and JOHN
DOES 6-10, being persons who own, are employed by or
are associated with Regional Integrated Logistics, Inc. d/b/a
Regional Parcel Services,

                        Defendants.

----------------------------------------------------------------------- x

Civil Action No.___ cv ___

**COMPLAINT**

12-CV-4838 (JMF)

ECF CASE

        Plaintiff the City of New York (the "City"), by its counsel Michael A. Cardozo,

Corporation Counsel of the City of New York, respectfully alleges, with knowledge of its own

actions and on information and belief as to the actions of others, as follows:

<u>Nature of the Action</u>

        1.    This action seeks relief for the defendants' illegal sale, distribution,

transport and delivery of unstamped cigarettes[1] into New York City.  Defendants Robert Gordon,

d/b/a All Of Our Butts, Marcia Gordon, and John Does 1-5 (referred to collectively as the

"Gordon Defendants") trade in cigarettes from an establishment located in Salamanca, New

---

[1] "Unstamped" cigarettes are cigarettes for which New York State and New York City excise
taxes have not been pre-paid through the purchase of a tax stamp.  "Stamped" cigarettes are
those for which a tax stamp has been purchased and affixed by licensed State and City stamping
agents – who thereby pre-pay the tax prior to selling the cigarettes to retailers.  The stamps are
affixed to the cigarette package as evidence of payment of the tax.  *See* N.Y. Tax L. § 471;
*Oneida Nation of N.Y. v. Cuomo*, 645 F.3d 154, 158 (2d Cir. 2011) (describing cigarette tax
collection system).

York.   The Gordon Defendants accept telephone, internet and mail orders from consumers nationwide, including in New York City, and deliver the cigarettes through common carrier or delivery service, thereby violating a host of federal, state and New York City laws regulating the sale, delivery and taxation of cigarettes, including federal laws that require that taxes be paid, tax stamps be affixed, and deliveries conform to certain reporting and other requirements.

        2.      Defendants Regional Integrated Logistics, Inc., d/b/a Regional Parcel Services and John Does 6-10 (referred to collectively as the "RPS Defendants") participate with the Gordon Defendants in the transport and distribution of unstamped cigarettes and violate and conspire to violate federal laws prohibiting trafficking in contraband cigarettes.

        3.      The Gordon Defendants and the RPS Defendants undermine the public health efforts of and efforts to collect tax revenue by New York State and New York City.  The City of New York accordingly brings this civil action under the Jenkins Act, 15 U.S.C. § 375 *et seq.*, (as amended by the Prevent All Cigarette Trafficking Act of 2010) (collectively, the "PACT Act"), the Contraband Cigarette Trafficking Act, 18 U.S.C. § 2341 *et seq.* ("CCTA"), the Racketeer Influenced Corrupt Organizations Act, 18 U.S.C. § 1961 *et seq.* ("RICO"), and the New York Cigarette Marketing Standards Act, N.Y. Tax L. § 483 *et seq.* ("CMSA").

        4.      In advertising, selling, distributing, transporting and shipping unstamped cigarettes to consumers in New York City without filing reports with tax administrators and complying with age verification requirements, the Gordon Defendants violate, *inter alia*, the PACT Act, the CCTA, RICO and the CMSA. In shipping, distributing and transporting unstamped cigarettes to consumers in New York City, the RPS Defendants violate the CCTA and also conspire to violate RICO. These violations entitle the City to: i) an order enjoining the Gordon Defendants and the RPS Defendants from making further sales or deliveries of

unstamped cigarettes into the City; (ii) damages, including treble damages; (iii) civil penalties; (iv) disgorgement and (v) attorney's fees.

## JURISDICTION AND VENUE

5.      The Court has jurisdiction over the subject matter of this action pursuant to 15 U.S.C. § 378, 18 U.S.C. § 1964, 18 U.S.C. § 2346 (b)(1), 28 U.S.C. § 1331, and 28 U.S.C. § 1367(a).

6.      Venue is proper in this district under 18 U.S.C. § 1965(a) and (b) and 28 U.S.C. § 1391(b), because a substantial part of the events and omissions giving rise to the claims occurred in this district.

## PARTIES

7.      The City is a municipal corporation organized under the laws of the State of New York.

8.      Defendant Robert Gordon is a member of the Seneca Nation of Indians residing on the Allegany Reservation of the Seneca Nation of Indians, in the State of New York. Robert Gordon does business as "All Of Our Butts," and owns, manages and/or is employed by All Of Our Butts, which has a place of business at 719 Broad Street, Salamanca, New York 14779, on the Allegany Reservation of the Seneca Nation of Indians.

9.      Defendant Marcia Gordon is a resident of the State of New York and is an owner, employee and/or manager of All Of Our Butts.

10.     Defendants John Does 1-5 are owners, employees and/or associates of All Of Our Butts who are engaged in the operations of All Of Our Butts, including the receipt, transport, distribution and sale of unstamped cigarettes to New York City residents. The

identities of John Does 1-5 are presently unknown to the City; upon learning their identities, the complaint will be amended to so reflect.

11.     Defendant Regional Integrated Logistics, Inc., d/b/a Regional Parcel Services ("RPS") is a corporation formed under the laws of the State of New York, with a principal place of business at 2321 Kenmore Ave, Buffalo, NY 14207.

12.     Defendants John Does 6-10 are owners, employees and/or associates of RPS who are engaged in the operations of RPS including the receipt, shipment, transport or distribution of unstamped cigarettes to New York City residents. The identities of John Does 6-10 are presently unknown to the City; upon learning of their identities, the complaint will be amended to so reflect.

## FACTS

13.     Cigarette smoking is a deadly and costly public health problem. Smoking causes a host of crippling and deadly diseases, including cardiovascular disease, coronary heart disease, emphysema, and a wide range of cancers. *Report on the Global Tobacco Epidemic* 8 (WHO 2008 Reports).[2] Tobacco-related illnesses annually kill approximately 440,000 people in the United States. Centers for Disease Control and Prevention ("CDC"), *Smoking-Attributable Mortality, Years of Potential Life Lost, and Productivity Losses--United States, 2000-2004* (2008);[3] Statement of Vice Admiral Richard H. Carmona, U.S. Surgeon General, *reprinted at* 155 Cong. Rec. S6000 (June 3, 2009). Tobacco kills more people than AIDS, alcohol, drug abuse, car accidents, murders, suicides, and fires combined.

---

[2] *Available at* http://www.who.int/tobacco/mpower/en/.

[3] *Available at* http://www.cdc.gov/mmwr/preview/mmwrhtml/mm5745a3.htm.

14.     Tobacco is a substantial drain on the public fisc. Tobacco-related disease and death costs $193 billion a year in health-care spending and lost productivity. CDC, *Smoking-Attributable Mortality, Years of Potential Life Lost, and Productivity Losses—United States, 2000-2004, supra.*   Annual costs for the Medicaid and Medicare programs attributable to smoking-related illnesses have been estimated to be $30 billion (in 2006) and $14.2 billion (in 1993) respectively. CDC, *Sustaining State Programs for Tobacco Control: Data Highlights 2006*, at 17 (Medicaid);[4] Xiulan Zhang et al., *Cost of Smoking to the Medicare Program, 1993*, 20 Health Care Financing Rev. No. 4 at 183 (1999) (Medicare)[5].

15.     The public-health and economic costs incurred from tobacco use have compelled all levels of government to regulate stringently the sale and use of tobacco, and in particular to impose high costs on tobacco through taxation.   New York City and State for example impose a high tax on cigarettes because "[i]t is well established that an increase in the price of cigarettes decreases their use and that raising tobacco excise taxes is one of the most effective policies for reducing the use of tobacco." Inst. of Med., *Ending the Tobacco Problem: A Blueprint for the Nation* 80, 182 (2007); Report of the Surgeon General, *How Tobacco Smoke Causes Disease: The Biology and Behavioral Basis for Smoking-Attributable Disease*, at 654 (2010)[6] (noting that "increases in the price of cigarettes through excise taxes [...] are an effective policy intervention to prevent smoking initiation among adolescents and young adults, reduce cigarette consumption, and increase the number of smokers who quit").

---

[4]  *Available at* http://www.cdc.gov/tobacco/data_statistics/state_data/data_highlights/2006/pdfs/dataHighlights06rev.pdf.

[5]  *Available at* https://www.cms.gov/Research-Statistics-Data-and-Systems/Research/HealthCareFinancingReview/downloads/99summerpg179.pdf.

[6]  *Available at* http://www.surgeongeneral.gov/library/tobaccosmoke/report/chapter9.pdf.

16.     A ten-percent increase in the price of cigarettes is estimated to reduce cigarette demand among adults by three to five percent.  Frank J. Chaloupka & Rosalie Liccardo Pecula, *The Impact of Price on Youth Tobacco Use*, National Cancer Institute Monograph No. 14, at 194 (Nov. 2001).[7]  The response by young people to price rises is even greater; a ten-percent increase in cigarette prices is estimated to reduce the number of youth smokers by at least six or seven percent. *See Prevent All Cigarette Trafficking Act of 2007, and the Smuggled Tobacco Prevention Act of 2008: Hearing Before the Subcomm. on Crime, Terrorism, and Homeland Security of the H. Comm. on the Judiciary*, Serial No. 110-47, at 52 (May 1, 2008) (Statement of Matthew L. Myers, President, Campaigning for Tobacco-Free Kids).[8]

17.     The availability of cigarettes on which taxes have not been paid undercuts the beneficial effect of high cigarette prices, so that "limit[ing] smuggling and the availability of untaxed tobacco products is essential to maximizing the effectiveness of higher taxes in reducing tobacco use[.]" Report of the Surgeon General, *How Tobacco Smoke Causes Disease: The Biology and Behavioral Basis for Smoking-Attributable Disease* (2010), at 654.[9]

18.     The New York State cigarette tax is imposed principally by New York Tax Law § 471(1): "There is hereby imposed and shall be paid a tax on all cigarettes possessed in the state by any person for sale."  The tax levied under Tax Law § 471 is at present $4.35 per 20-cigarette pack. N.Y. Tax L. § 471(1).  New York City's separate tax of $1.50 per 20-cigarette pack is imposed on all cigarettes possessed by any person for sale or use in the City. *See* Administrative Code of the City of New York ("Ad. Code") §§ 11-1302(a)(1), (2).  All cigarettes

---

[7] *Available at* http://cancercontrol.cancer.govTCRB/ monographs/14/m14_12.pdf.

[8] *Available at* http://judiciary.house.gov/hearings/hear_050108.html.

[9] *Available at*  http://www.cdc.gov/tobacco/data_statistics/sgr/2010/index.htm

within the State and City are presumptively subject to tax unless the contrary is established. N.Y. Tax L. § 471(1); Ad. Code § 11-1302(d).

19.    New York State and City tax laws require a tax stamp to be affixed to cigarette packages to evidence payment of the taxes imposed pursuant to the Tax Law and Administrative Code.  N.Y. Tax L. §§ 471, 473; Ad. Code §§ 11-1302, 1304.

20.    New York State and City license or designate entities known as "stamping agents," who pre-pay the State and City cigarette taxes by purchasing tax stamps at a cost equal to the amount of the tax and affix the stamps to the cigarette packs that the stamping agents sell at wholesale.  The agents must incorporate the amount of the tax into the wholesale price of the cigarettes and the cost of the tax stamps must in turn be included in the sales price of each subsequent sale of the cigarettes, so that the tax burden is passed along to each subsequent purchaser in the distribution chain, ultimately falling upon the consumer. N.Y. Tax L. §§ 471, 473 and Ad. Code § 11-1302(a)(3), (e) and (h). Stamping agents are the only entities lawfully permitted to affix State and City tax stamps to cigarettes and the only entities that may lawfully import unstamped cigarettes into the City and State.

### THE PACT ACT

21.    The PACT Act, 15 U.S.C. §§ 375-378, is intended to assist state and local governments in the enforcement of their tobacco laws.  The PACT Act requires, among other things, that remote cigarette sales – sales in which the buyer and seller are not in one another's physical presence, which the PACT Act terms "delivery sales" – i) comply with the laws of the jurisdiction into which the cigarettes are transferred, including tax and stamping requirements; ii) be reported to the recipient jurisdiction; and iii) comply with specific labeling, age verification and delivery requirements.  The PACT Act authorizes civil enforcement actions by state and local governments.  15 U.S.C. § 378(c).

## THE CCTA

22.     The CCTA, 18 U.S.C. §§ 2341-2346, also assists state and local governments in enforcing their tobacco laws. The CCTA makes it a felony punishable by up to five years' imprisonment for any unauthorized person to ship, transport, receive, possess, sell, distribute or purchase more than 10,000 cigarettes that do not bear the tax stamp of the jurisdiction in which the cigarettes are found. 18 U.S.C. §§ 2341(2), 2342.   The CCTA also authorizes civil enforcement actions by state and local governments. 18 U.S.C. § 2346

## THE CMSA

23.     The CMSA, New York Tax Law §§ 483-486, makes it unlawful for any "retail dealer, … with intent to avoid the collection or paying over of such taxes as may be required by law, to advertise, offer to sell, or sell cigarettes at less than cost of such … retail dealer." N.Y. Tax L. § 484(a)(1). The "cost of the retail dealer" includes the "basic cost of cigarettes," *Id.* § 483(b)(3)(A), which is the "invoice cost of cigarettes to the [cigarette stamping] agent who purchases from the manufacturer … to which shall be added the full face value of any stamps which may be required by law." *Id.* § 483(a)(1).

## ACTIONS OF THE DEFENDANTS

24.     Robert Gordon owns a retail cigarette business known as All Of Our Butts, located at 719 Broad Street, Salamanca, New York 14779 on the Allegany Reservation of the Seneca Nation of Indians.   The business also operates through an Internet website at www.allofourbutts.com.   Marcia Gordon operates All Of Our Butts on a day-to-day basis, assisted by John Does 1-5.

25.     The website at www.allofourbutts.com has been in operation since May 2002.   Through the website, All Of Our Butts offers to make delivery sales of cigarettes, and encourages customers to place orders over the Internet, by mail or by telephone.   Historically,

95% of All Of Our Butts' sales have been internet and telephone orders placed by and sent to customers who do not reside on the Allegany Reservation. The remaining five per cent of the Gordon Defendants' business has come from walk-in customers at the reservation store.

26.     The All of Our Butts website states: "The business is Native American Indian (Seneca) owned and operated, and we offer discount tobacco products in our store, online, e-mail or by phone. As a Sovereign Nation, we do not pay state taxes on cigarettes and tobacco products, we then pass this savings on to all of our customers nationwide by offering discount cigarettes, chewing tobacco, pipe tobacco and domestic cigars online."

27.     On the All Of Our Butts website, customers are offered the option of deliveries by "RPSgnd" and are informed that if they are ordering cigarettes, they must use "RPSgnd" as the method of delivery. Upon information and belief, "RPSgnd" refers to Regional Integrated Logistics, Inc. d/b/a Regional Parcel Services.

28.     In 2009, All Of Our Butts had gross revenues of approximately $2 million per month, and a profit margin of 5-10%, so that the business earned from $100,000-$200,000 per month.

29.     Days before its July 2010 effective date, Robert Gordon sued the United States to enjoin enforcement of the PACT Act. *See Gordon v. Holder,* 10-cv-1092, 2011 U.S. Dist. Lexis 139201 (D.D.C. December 5, 2011), *appeal docketed,* Nos. 12-5031, 12-5051 (D.C. Cir.). Gordon persuaded the district court to enjoin enforcement of some provisions of the PACT Act but the court declined to enjoin other provisions, for the most part following an earlier decision, *Red Earth LLC v. United States*, 728 F. Supp. 2d 238, 260 (W.D.N.Y. 2010), *aff'd*, 657 F.3d 138 (2d Cir. 2011). Gordon was thus well-informed as to which provisions of the PACT Act were enjoined and which were not.

30.     On or about April 18, 2012, an investigator from the Office of the New York City Sheriff accessed the All Of Our Butts Internet website at www.allofourbutts.com and entered an order for two 200 count bags of "Rollies Menthol King," at a cost of $15.00 per bag, for a total purchase price of $30.00. No sales tax was charged. The shipping charge was $20.00, for a total cost of $50.00. The investigator entered his name, address, and telephone number into the website, and indicated that he would pay by postal money order.  The investigator submitted a copy of a driver's license as required by the purchase instructions on the website.

31.     The investigator then downloaded and printed, from the All Of Our Butts Website, a form with the heading, "RPS Regional Parcel Services."  The form was entitled "Delivery Release Authorization," and contained printed language stating in part that, "I hereby certify that I am the person whom ordered product requiring age of majority confirmation and have provided proof of age at time of purchase."

32.     On May 3, 2012, at the address provided to All of Our Butts by the investigator, a delivery driver from an unidentified delivery service delivered to an office clerk a brown cardboard box affixed with a label on which was printed "RPS Regional Parcel Services." The return address was "All Of Our Butts, 719 Broad Street, Salamanca, NY 14479."

33.     The delivery driver did not request identification from the office clerk and the driver did not ask for or receive the "Delivery Release Authorization." The delivery was accepted by and signed for by the office clerk, who was not the investigator that had placed the order.

34.     The package was addressed to the name provided by the investigator, at the address provided by him.  In addition to tracking numbers and bar codes, the label displayed the following statement:

"Cigarettes/Cigars/Smokeless Tobacco/Electronic Cigarettes: Federal Law requires the payment of all applicable excise taxes and compliance with applicable licensing and tax-stamping requirements."

35.     The brown cardboard box contained an invoice which specified "2 Rollies Menthol King 200ct Bag @ $15," as well as two clear plastic bags, inside of which were two white cardboard boxes, each filled with 200 cigarettes. Each white cardboard box had "menthol" handwritten on the outside but otherwise was not printed with any brand name or other markings.[10]

36.     None of the packaging in which the cigarettes were contained was affixed with either the New York State tax stamp or with the joint New York State-New York City tax stamp.

37.     None of the packaging in which the cigarettes were contained was imprinted with the required Surgeon General's warning.

38.     All Of Our Butts did not report the sale or shipment of cigarettes sent to the investigator to either the New York City Department of Finance or to the chief law enforcement officer of the City of New York, *i.e.*, the Corporation Counsel.

39.     On information and belief, the Gordon Defendants distributed, sold and caused to be delivered thousands of cartons of unstamped cigarettes to persons throughout the

---

[10] The investigator had purchased a product identified as "Rollies," which All Of Our Butts advertises as "1 bag of  200 cigarettes. yep, we're serious. A bag," for $15.00. *See* http://www.allofourbutts.com/?page=shop/browse&keyword=Rollies&ps_session= 2488d59a916bdb630dd31 8fd8ce3e9e5  (last visited June 4, 2012).

"Rollies" are illegally manufactured cigarettes on which no federal or state tax has been paid; they lack the required Surgeon General's warning and bear no markings concerning their manufacture, so as to conceal their origin from law enforcement and taxing authorities. *See generally* Government Accountability Office, Illicit Tobacco: Various Schemes Are Used to Evade Taxes and Fees (GAO-11-313) at 19 (Mar. 2011), *available at* http://www.gao.gov/products/GAO-11-313.

five boroughs of the City. The Gordon Defendants' sales of unstamped cigarettes that they distributed, sold and caused to be delivered into the City are collectively referred to hereafter as the "Delivery Sales to City Consumers." Persons in the City, generally, are referred to hereafter as "City Consumers."

40.    On information and belief, the RPS defendants transported and distributed the cigarettes involved in the Delivery Sales to City Consumers and caused them to be delivered to the City Consumers.

### Allegations Related to the PACT Act

41.    Pursuant to the PACT Act, a "delivery sale" is any sale of cigarettes to a "consumer" in which the seller is not in the physical presence of the consumer when the order is placed, or the seller is not in the physical presence of the consumer when the consumer obtains possession of the cigarettes, or the cigarettes are delivered to the consumer by any method of remote delivery, such as common carrier. *See* 15 U.S.C. § 375(5).

42.    The Delivery Sales to City Consumers were made to "consumers" within the meaning of the PACT Act, 15 U.S.C. § 375(4), because the purchasers of the cigarettes are not licensed or registered by New York State or City to deal in tobacco products and are therefore not "lawfully-operating cigarette manufacturers, distributors, wholesalers or retailers."

43.    The Delivery Sales to City Consumers were "delivery sales" within the meaning of the PACT Act, 15 U.S.C. § 375(5), because the Gordon Defendants were not in the physical presence of the City Consumers when the orders were placed, or because the Gordon Defendants were not in the physical presence of the City Consumers when the City Consumers obtained possession of the cigarettes or because the cigarettes were delivered to the City Consumers by a method of remote delivery. *See* 15 U.S.C. § 375(5).

44.     A "delivery seller" is a person who makes a delivery sale. 15 U.S.C. § 375(6).  Having made the Delivery Sales to City Consumers, the Gordon Defendants are delivery sellers.

45.     The Delivery Sales to City Consumers were made in interstate commerce within the meaning of the PACT Act, because the cigarettes were sent from Indian country, as that term is defined by the PACT Act, to New York City. *See* 15 U.S.C. §§ 375(7), (9).

46.     Under the PACT Act, any person that sells, transfers, or ships for profit cigarettes in interstate commerce into New York State in a delivery sale must file with the New York State Department of Taxation and Finance specified information identifying the seller and must also file, not later than the 10th day of each calendar month, a memorandum containing specified information concerning each and every shipment of cigarettes made during the previous calendar month into New York State.   Such persons must also file copies of the memorandum concerning any and all cigarette shipments into New York State with the New York City Department of Finance and the Corporation Counsel of the City of New York. *See* 15 U.S.C. § 376.

47.     In addition to the reporting requirements, The PACT Act also requires any delivery seller making a delivery sale into New York City and/or State to:

     (i)     comply with all laws governing the sale of cigarettes in New York City and/or State. 15 U.S.C. § 376a(a)(3)[11];

---

[11] The enforcement of portions of this provision of the PACT Act by the United States as against Robert Gordon has been stayed. *See Gordon v. Holder,* 2011 U.S. Dist. Lexis 139201 (D.D.C. December 5, 2011) (staying enforcement of 15 U.S.C. § 376a(a)(3)(A) and (B)), *appeal docketed*, Nos. 12-5031, 12-5051 (D.C. Cir.).  Enforcement of the other subparagraphs of 15 U.S.C. § 376a(a)(3) was enjoined in *Red Earth LLC v. United States*, 728 F. Supp. 2d 238, 260 (W.D.N.Y. 2010), *aff'd*, 657 F.3d 138 (2d Cir. 2011), but not in *Gordon v. Holder.*

(ii)    make certain that all applicable cigarette taxes have been paid to each

jurisdiction and that the required tax stamps have been affixed before the

delivery sale is made. 15 U.S.C. §§ 376a(a)(4), (d)[12];

(iii)   assure that the weight of cigarettes sold, delivered, or caused to be

delivered in a single sale or delivery does not exceed ten pounds. 15

U.S.C. §§ 376a (a), (b)(3);

(iv)    place specified notices on the outside of the packages involved in the

delivery sale. 15 U.S.C. §§ 376a (a), (b)(1), (2); and

(v)     deliver the cigarettes by a method that requires the person to whom the

delivery is made to provide age verification to the delivery service.   15

U.S.C. §§ 376a (a), 376a (b)(4).

48.     None of the Delivery Sales to City Consumers were reported to the New

York City Department of Finance or to the Office of the Corporation Counsel of the City of New

York.

49.     None of the Delivery Sales to City Consumers were of cigarettes on which

taxes had been paid or to which tax stamps had been affixed.

50.     New York City requires persons who sell cigarettes at retail to obtain a

license.  None of the Gordon Defendants are licensed to sell cigarettes in New York City.

51.     In sum, in violation of those provisions of the PACT Act that are not

enjoined by any court, the Gordon Defendants (i) did not report to New York City the Delivery

---

[12] The enforcement of these provisions of the PACT Act by the United States as against Robert
Gordon has been stayed.  *See Gordon v. Holder,*  2011 U.S. Dist. Lexis  139201 (D.D.C.
December 5, 2011), *appeal docketed*, Nos. 12-5031, 12-5051 (D.C. Cir.).

Sales to City Consumers in a memorandum describing the particulars of the sales; and (ii) did not use a method of delivery that required the age of the buyer to be verified upon delivery.

52.   Sales and shipments of cigarettes by the Gordon Defendants in violation of the PACT Act will continue unless enjoined.

### Allegations Related to the CCTA

53.   With exceptions not relevant here, the Contraband Cigarette Trafficking Act prohibits the receipt, shipment, possession, transport, sale, and distribution of contraband cigarettes, defined as more than 10,000 cigarettes that bear no evidence of the payment of applicable State or local cigarette taxes of the State or locality in which the cigarettes are found, if that jurisdiction requires stamps to be placed on packages or other containers of cigarettes to evidence tax payments. 18 U.S.C. §§ 2341(2); 2342.

54.   New York State and the City each impose an excise tax on cigarettes possessed for sale or use in the City or State, including cigarettes for sale by Native Americans to non-members of their tribe.  *See* N.Y. Tax L. §§ 471, 471-a; Ad. Code § 11-1302.

55.   New York State and the City each require a tax stamp (in the case of the City, a joint City-State tax stamp) to be affixed to cigarette packages to evidence payment of the taxes imposed pursuant to the Tax Law and Administrative Code, including on cigarettes for sale by Native Americans to non-members of their tribe.  N.Y. Tax L. §§ 471, 473; Ad. Code §§ 11-1302, 1304.

56.   None of the cigarettes purchased, received, possessed, shipped, transported, sold, and distributed by the Gordon Defendants in the Delivery Sales to City Consumers were affixed with the joint New York State/New York City tax stamp or with the New York State tax stamp.

57.     None of the cigarettes received, shipped, transported and distributed by the RPS Defendants in the Delivery Sales to City Consumers were affixed with the joint New York State/New York City tax stamp or with the New York State tax stamp.

58.     The cigarettes purchased, received, possessed, shipped, transported, sold, and distributed by the Gordon Defendants in the Delivery Sales to City Consumers are contraband cigarettes within the meaning of the CCTA: because i) there is a State and a City cigarette tax applicable to the cigarettes; ii) New York State and City both require a stamp to be placed on packages of cigarettes to evidence payment of cigarette taxes; (iii) the cigarettes were found within the State and the City without tax stamps; and (iv) more than 10,000 unstamped cigarettes were involved.

59.     The cigarettes received, possessed, shipped, transported, and distributed by the RPS Defendants in the Delivery Sales to City Consumers are contraband cigarettes within the meaning of the CCTA: because i) there is a State and a City cigarette tax applicable to the cigarettes; ii) New York State and City both require a stamp to be placed on packages of cigarettes to evidence payment of cigarette taxes; and (iii) the cigarettes were found within the State and the City without tax stamps; and (iv) more than 10,000 unstamped cigarettes were involved.

60.     The Delivery Sales to City Consumers by the Gordon Defendants and the RPS Defendants violated the CCTA.

## Allegations Related to RICO

### The Predicate Offenses

61.     Pursuant to RICO, 18 U.S.C. §1962(c), it is unlawful for any person employed or associated with any enterprise engaged in or affecting interstate commerce to

conduct or participate, directly or indirectly, in the conduct of the enterprise's affairs through a pattern of racketeering activity.

62.     "Racketeering activity" includes any act indictable under 18 U.S.C. § 2341 *et seq.* (concerning trafficking in contraband cigarettes in violation of the CCTA). *See* 18 U.S.C. § 1961(1). A CCTA violation is accordingly a RICO "predicate offense"; violation of the CCTA constitutes racketeering activity within the meaning of the RICO statute.

63.     The Delivery Sales to City Consumers by the Gordon Defendants and the RPS Defendants violated the CCTA and thus constitute racketeering activity within the meaning of RICO.

### The Enterprise

64.     At all times relevant to this complaint, All Of Our Butts has been an "enterprise" within the meaning of 18 U.S.C. § 1961(4). All Of Our Butts engaged in, and its activities affected, interstate commerce. All Of Our Butts constituted an ongoing organization whose employees and associates functioned as a continuing unit for the common purpose of achieving the objectives of the enterprise, namely, making money through the sale of contraband cigarettes.

65.     At all times relevant to this complaint, Robert Gordon, Marcia Gordon, and John Does 1-5 have been employed by or associated with All Of Our Butts.

66.     At all times relevant to this complaint, the RPS Defendants have been associated with All Of Our Butts.

### The Purposes, Methods and Means of the Enterprise

67.     The principal purpose of All Of Our Butts has been to generate money for its owners, associates and employees by utilizing delivery sales to sell contraband cigarettes. This purpose has been implemented by Robert Gordon, Marcia Gordon, John Does 1-5 and the

RPS Defendants through various legal and illegal activities, including the receipt, possession, sale, transport, distribution, and shipment of contraband cigarettes.

68.     Robert Gordon, Marcia Gordon, John Does 1-5 and the RPS Defendants participated in the conduct of the affairs of All Of Our Butts by receiving, possessing, selling, shipping, transporting and distributing contraband cigarettes into New York City, or arranging therefor.

69.     At all times relevant to this complaint, the affairs of All Of Our Butts have been conducted through a pattern of racketeering activity within the meaning of 18 U.S.C. § 1961(1)(B), consisting principally of multiple and continuing instances of contraband cigarette trafficking in violation of 18 U.S.C. § 2341 *et seq.*

## Racketeering Acts

70.     At all times relevant to this complaint, Robert Gordon, Marcia Gordon, John Does 1-5, and the RPS Defendants knowingly and intentionally purchased, received, possessed, sold, transported, distributed and/or shipped contraband cigarettes to City Consumers, namely, more than 10,000 cigarettes, lacking joint New York State/New York City tax stamps, in violation of the CCTA, 18 U.S.C. § 2341 *et seq.*

71.     The foregoing racketeering acts constitute a pattern of racketeering activity within the meaning of 18 U.S.C,. § 1961, in that they consist of two or more acts of racketeering activity within a ten-year period.

## Role of Robert Gordon, Marcia Gordon, and John Does 1-5

72.     At all times relevant to this complaint, Robert Gordon, Marcia Gordon, and John Does 1-5 participated in the leadership, management and operation of All Of Our Butts by, among other things:

a.      Engaging in the day-to-day activities required to acquire, advertise, market, sell and distribute contraband cigarettes.

b.      Causing contraband cigarettes to be sold to consumers in New York City.

c.      Arranging for the transport and distribution of contraband cigarettes into New York City.

d.      Employing and instructing other individuals to engage in all of the above activities.

**Role of the RPS Defendants**

73.      At all times relevant to this complaint the RPS Defendants participated in the operation of All Of Our Butts by, among other things:

a.      Engaging in the day-to-day activities required to receive, ship, transport and distribute contraband cigarettes.

b.      Causing contraband cigarettes to be shipped, transported and distributed to consumers in New York City.

c.      Coordinating with the Gordon Defendants to arrange for the shipment, transport and distribution of contraband cigarettes to consumers in New York City.

d.      Employing and instructing other individuals to engage in all of the above activities.

**<u>Allegations Related to Conspiracy to Violate RICO</u>**

74.      At all times relevant to this complaint, the RPS Defendants (Regional Integrated Logistics, Inc. d/b/a Regional Parcel Services and John Does 6-10), conspired with the Gordon Defendants to violate the provisions of 18 U.S.C. § 1962(c), in violation of 18 U.S.C. §

1962(d), by agreeing to further endeavors of All Of Our Butts that, when completed, amount to contraband cigarette trafficking, in violation of the CCTA, 18 U.S.C. § 2341 *et seq*.

       75.    At all times relevant to this complaint, the RPS Defendants agreed to a plan with the Gordon Defendants whereby the Gordon Defendants would purchase, receive, possess, sell and distribute contraband cigarettes and the RPS Defendants would receive, ship, distribute and/or transport the contraband cigarettes to consumers in New York City and whereby the conspirators would all receive a share of the profits.  The RPS Defendants recognized that an essential element of the plan consisted of multiple violations of the CCTA, 18 U.S.C. § 2341 *et seq*.  The RPS Defendants agreed that certain conspirators would commit CCTA violations while the RPS Defendants would engage in conduct intended to support and facilitate those violations of the CCTA.

       76.    At all times relevant to this complaint, within the Southern District of New York and elsewhere, the RPS Defendants, together with persons employed by or associated with All Of Our Butts, an enterprise that engaged in, and the activities of which affected, interstate and foreign commerce, knowingly and intentionally conspired to violate 18 U.S.C. § 1962(c), that is, to conduct and participate, directly and indirectly, in the conduct of the affairs of All Of Our Butts through a pattern of racketeering activity, as defined in 18 U.S.C. § 1961(1), (5).

       77.    The pattern of racketeering activity through which the RPS Defendants agreed to conduct the affairs of All Of Our Butts consisted of acts of contraband cigarette trafficking into New York City. The RPS Defendants agreed that some conspirators would commit at least two of these acts of racketeering in the conduct of the affairs of All Of Our Butts.

**Allegations Related to the New York Cigarette Marketing Standards Act**

78.    Under the CMSA, it is unlawful for any agent, wholesale dealer or retail dealer to sell cigarettes at prices that do not include the costs associated with the payment of all cigarette taxes required by law.  N.Y. Tax L. §§ 483-484.

79.    The Gordon Defendants are "retail dealers' within the meaning of the CMSA because they sell cigarettes at retail.  *See* N.Y. Tax L. § 483(4).

80.    Pursuant to N.Y. Tax L. §§ 471 and 471-e, and Ad. Code § 11-1302, cigarettes sold to City Consumers by the Gordon Defendants are required by law to bear tax stamps whose cost per carton (ten packs) includes the $43.50 State cigarette excise tax and $15 City cigarette excise tax, or $58.50 in City and State cigarette excise taxes per carton.   The amount of these taxes has been constant since at least July 1, 2010.

81.    The Gordon Defendants sold the two "Rollies Menthol King 200 ct Bags" of cigarettes to the City investigator for $15.00 per carton,[13] and therefore the price cannot include the cost of tax stamps required by law.

82.    None of the cigarettes advertised and sold on the All Of Our Butts website cost more than $40 per carton, and hence none of those cigarettes can include in their price the cost of tax stamps required by law.

83.    The Gordon Defendants accordingly advertise and sell cigarettes at less than the minimum prices mandated by the CMSA, because the prices do not include the cost of tax stamps required by law.

---

[13] 200 cigarettes is the equivalent of one carton (10 packs x 20 cigarettes per pack).

84.     The Gordon Defendants advertise and sell cigarettes at less than the minimum prices mandated by the CMSA with the intent to avoid the collection or paying over taxes required by law.

## FIRST CLAIM FOR RELIEF

### Gordon Defendants
### Violation of the PACT Act

85.     The City repeats and realleges paragraphs 1-84 as if fully set forth herein.

86.     The Gordon Defendants are "delivery sellers" within the meaning of the PACT Act.

87.     City Consumers are "consumers" within the meaning of the PACT Act.

88.     As to the Delivery Sales to City Consumers, the Gordon Defendants (i) did not report the sales to New York City in a memorandum describing the particulars of the sales; and (ii) did not comply with the age-verification requirements of the PACT Act.

89.     The Gordon Defendants' Delivery Sales to City Consumers were unlawful within the meaning of the PACT Act.

90.     Unless enjoined, the Gordon Defendants will continue to make sales to City Consumers without complying with the PACT Act.

91.     As a direct result of the Gordon Defendants' sales to City Consumers in violation of the PACT Act, the City has suffered and continues to suffer damages.

92.     Pursuant to the PACT Act, 15 U.S.C. § 378, the City, as a local government, is empowered to bring an action in federal district court to prevent and restrain violations of the PACT Act and to obtain any other appropriate forms of relief from such violations, including civil penalties, disgorgement and damages.

## SECOND CLAIM FOR RELIEF

**Gordon Defendants**
**Violation of 18 U.S.C. § 1962(c)**

93.     The City realleges paragraphs 1-84 as if fully set forth herein.

94.     New York City is a "person" as defined in 18 U.S.C. §§ 1961(3).

95.     Robert Gordon, Marcia Gordon, John Does 1-5 and each of the RPS Defendants is a "person" as defined in 18 U.S.C. § 1961(3) and as used in 18 U.S.C. § 1962(c).

96.     All Of Our Butts constitutes an "enterprise" as defined in 18 U.S.C. § 1961(4) and as used in 18 U.S.C. § 1962(c).  All Of Our Butts engages in activities affecting interstate commerce and did so at all times relevant to the complaint.

97.     Robert Gordon, Marcia Gordon, John Does 1-5 and each of the RPS Defendants is employed by and/or associated with All Of Our Butts and conducts or participates in the management and operation of the affairs of All Of Our Butts through a pattern of racketeering activity within the meaning of 18 U.S.C. §§ 1961(1)(B), 1961(5) and 1962(c), namely, multiple and repeated acts of contraband cigarette trafficking, in violation of 18 U.S.C. §§ 2341 *et seq.*

98.     The acts of contraband cigarette trafficking engaged in by Robert Gordon, Marcia Gordon, John Does 1-5 and the RPS Defendants constitute a pattern of racketeering activity within the meaning of 18 U.S.C. § 1961(5), because the acts are related to one another and are continuous.  The acts are connected to one another as part of a plan to accomplish a uniform purpose, which is the making of a profit from the sale of contraband cigarettes.  The repeated nature of the conduct and the threat of similar conduct occurring in the future make the acts continuous.

99.     New York City has suffered injury to its business or property within the meaning of 18 U.S.C. § 1964(c) by reason of the violation of 18 U.S.C. § 1962(c) by Robert Gordon, Marcia Gordon, John Does 1-5 and the RPS Defendants because a City tax of $15 was due and not paid on each carton of cigarettes those defendants sold and had delivered into the City.

### THIRD CLAIM FOR RELIEF

**Marcia Gordon**
**Violation of the Contraband Cigarette Trafficking Act**

100.    The City realleges paragraphs 1-84 above as if fully set forth herein.

101.    At all times relevant to this complaint, Marcia Gordon knowingly sold, purchased, shipped, transported, received, possessed and distributed contraband cigarettes within the meaning of 18 U.S.C. § 2341(2), in that Marcia Gordon engaged in such activities in New York State with more than 10,000 cigarettes that bore neither the New York State tax stamp nor the joint New York State/ New York City tax stamp and that were sold and delivered to consumers in New York City.

102.    As a direct result of the foregoing violations of the CCTA by Marcia Gordon, the City has suffered damages because a City tax of $15 was due and not paid on each carton of cigarettes Marcia Gordon sold and had delivered into the City.

103.    Marcia Gordon will continue to violate the CCTA unless enjoined.

104.    Pursuant to the CCTA, 18 U.S.C. § 2346, the City, as a local government, is empowered to bring an action in federal district court to prevent and restrain violations of the CCTA and to obtain any other appropriate forms of relief from such violations, including civil penalties, disgorgement and damages.

## FOURTH CLAIM FOR RELIEF

### RPS Defendants
### Violation of the Contraband Cigarette Trafficking Act

105.   The City realleges paragraphs 1-84 above as if fully set forth herein.

106.   At all times relevant to this complaint, Regional Integrated Logistics, Inc. d/b/a Regional Parcel Services and John Does 6-10 knowingly shipped, transported, received, possessed and distributed contraband cigarettes within the meaning of 18 U.S.C. § 2341(2), in that these defendants engaged in such activities in New York State with more than 10,000 cigarettes that bore neither the New York State tax stamp nor the joint New York State/ New York City tax stamp and that were sold and delivered to consumers in New York City.

107.   As a direct result of the foregoing violations of the CCTA by the RPS Defendants, the City has suffered damages because a City tax of $15 was due and not paid on each carton of cigarettes those defendants had delivered into the City.

108.   The RPS Defendants will continue to violate the CCTA unless enjoined.

109.   Pursuant to the CCTA, 18 U.S.C. § 2346, the City, as a local government, is empowered to bring an action in federal district court to prevent and restrain violations of the CCTA and to obtain any other appropriate forms of relief from such violations, including civil penalties, disgorgement and damages.

## FIFTH CLAIM FOR RELIEF

### The RPS Defendants
### Conspiracy to Violate 18 U.S.C. § 1962(c) In Violation of § 1962(d)

110.   The City realleges paragraphs 1-84 as if fully set forth herein.

111.   New York City is a "person" as defined in 18 U.S.C. §§ 1961(3).

112. Regional Integrated Logistics, Inc. d/b/a Regional Parcel Services and each of John Does 6-10 is a "person" as defined in 18 U.S.C. § 1961(3) and as used in 18 U.S.C. § 1962(d).

113. All Of Our Butts is an "enterprise" within the meaning of 18 U.S.C. §§ 1961(4) and 1962(c); it engages in and its activities have an effect on interstate commerce.

114. The RPS Defendants each conspired with Robert Gordon, Marcia Gordon, and John Does 1-5 within the meaning of 18 U.S.C. § 1962(d) to violate 18 U.S.C. § 1962(c) in that Robert Gordon, Marcia Gordon, and John Does 1-5 and the RPS Defendants agreed among themselves to conduct the affairs of All Of Our Butts by furthering or facilitating its endeavors by acts that, when completed, would satisfy all of the elements of a criminal offense, to wit, contraband cigarette trafficking in violation of the CCTA, 18 U.S.C. §§ 2341 *et seq.*

115. With knowledge that Robert Gordon, Marcia Gordon, and John Does 1-5 engaged in multiple and repeated acts of contraband cigarette trafficking in violation of the CCTA, 18 U.S.C. §§ 2341, *et seq.*, the RPS Defendants agreed to conduct the affairs of All Of Our Butts in a manner that would facilitate the acts of Robert Gordon, Marcia Gordon, and John Does 1-5 and lead to the success of the scheme to traffic contraband cigarettes into New York City.

116. The scheme to traffic contraband cigarettes into New York City constitutes a pattern of racketeering activity within the meaning of 18 U.S.C. § 1961(5). The predicate acts are both related and continuous. The acts are connected to one another as part of a scheme to accomplish a uniform purpose, which is the making of a profit from the sale of contraband cigarettes in New York City. The repeated nature of the conduct during the period of the scheme and the threat of similar conduct occurring in the future make the acts continuous.

117.   New York City has suffered injury to its business or property within the meaning of 18 U.S.C. § 1964(c) by reason of defendants' violation of 18 U.S.C. § 1962(d), in an amount to be determined at trial, because a City tax of $15 was owed and not paid on every carton of cigarettes defendants sold and had delivered into the City .

## SIXTH CLAIM FOR RELIEF

**Gordon Defendants**
**Violation of the Cigarette Marketing Standards Act**

118.   Plaintiff repeats and realleges paragraphs 1-84 as if fully set forth herein.

119.   Each of the Gordon Defendants is a "retail dealer" of cigarettes within the meaning of the CMSA, N.Y. Tax L. § 483 *et seq.*

120.   The Gordon Defendants have repeatedly advertised, offered to sell and/or sold cigarettes for less than the "basic cost of cigarettes" within the meaning of N.Y. Tax L. § 483 by not including, as part of the price of the cigarettes, the full face value of the cigarette tax stamps required by New York law.

121.   Pursuant to N.Y. Tax L. § 484(a)(6), the Gordon Defendants' sales of cigarettes at prices that do not include the cost of tax stamps are *prima facie* evidence of the Gordon Defendants' intent to avoid the collection of, or paying over of, taxes required under New York law.

122.   As a direct result of the Gordon Defendants' violations of the CMSA, the City has suffered injury in that the Gordon Defendants' sales of cigarettes at prices that do not include the costs of applicable tax stamps deny the City the $15 City tax owed on each carton.

123.   Pursuant to N.Y. Tax L. § 484(b), any person injured by any violation or threatened violation of the CMSA may bring an action to prevent, restrain or enjoin such

violation or threatened violation and, in addition to such injunctive relief and costs of suit (including reasonable attorney's fees), may recover damages.

**WHEREFORE**, New York City respectfully prays that the Court grant judgment against defendants as follows:

a.  On the First Claim For Relief, enjoining the Gordon Defendants from violating the PACT Act, 15 U.S.C. § 375 *et seq.*, and requiring the Gordon Defendants to comply with the PACT Act by notifying the City of all delivery sales made to City Consumers and conforming to the PACT Act's age verification requirements;

b.  On the First Claim For Relief, requiring the Gordon Defendants to pay the City money damages in an amount equal to the City's actual damages caused by the Gordon Defendants' violations of the PACT Act, 15 U.S.C. § 375 *et seq.*, and/or civil penalties and/or disgorgement;

c.  On the Second Claim For Relief, requiring the Gordon Defendants to pay the City money damages in an amount three times the City's actual damages caused by those defendants' violation of RICO, 18 U.S.C. § 1962(c), as well as the attorney's fees and costs incurred in bringing this action;

d.  On the Third Claim For Relief, requiring Marcia Gordon to pay the City money damages in an amount equal to the City's actual damages caused by Marcia Gordon's violation of the CCTA, 18 U.S.C. § 2341 *et seq.*, and/or civil penalties and/or disgorgement;

e.     On the Third Claim For Relief, enjoining Marcia Gordon from violating the CCTA;

f.     On the Fourth Claim For Relief, requiring the RPS Defendants to pay the City money damages in an amount equal to the City's actual damages caused by the RPS Defendants' violation of the CCTA, 18 U.S.C. § 2341 *et seq.*, and/or civil penalties and/or disgorgement;

g.     On the Fourth Claim For Relief, enjoining the RPS Defendants from violating the CCTA;

h.     On the Fifth Claim For Relief, requiring the RPS Defendants to pay the City money damages in an amount three times the City's actual damages caused by the RPS Defendants' violation of RICO, 18 U.S.C. § 1962(d), as well as the attorney's fees and costs incurred in bringing this action;

i.     On the Sixth Claim For Relief, enjoining the Gordon Defendants from violating the CMSA;

j.     On the Sixth Claim For Relief, requiring the Gordon Defendants to pay the City money damages in an amount equal to the City's actual damages caused by the Gordon Defendants' violation of the CMSA and the attorney's fees and costs incurred in bringing this action; and

k.      Awarding such other and further relief as the Court may deem appropriate.

Dated: New York, New York
       June 20, 2012

                              MICHAEL A. CARDOZO
                              Corporation Counsel of the
                                City of New York
                              Attorney for Plaintiff the City of New York
                              100 Church Street, Room 20-99
                              New York, New York 10007
                              (212) 788-1324

                    By:    _____

                              Eric Proshansky (EP 1777)
                              Aaron Bloom    (AB 1977)
                              Assistant Corporation Counsel