# EXHIBIT E

Official - Subject to Final Review

1      IN THE SUPREME COURT OF THE UNITED STATES

2      - - - - - - - - - - - - - - - - - x

3      HEMI GROUP, LLC AND KAI                :

4      GACHUPIN,                              :

5              Petitioners                    :

6         v.                                  :   No. 08-969

7      CITY OF NEW YORK, NEW                  :

8      YORK.                                  :

9      - - - - - - - - - - - - - - - - - x

10                           Washington, D.C.

11                           Tuesday, November 3, 2009

12

13              The above-entitled matter came on for oral

14     argument before the Supreme Court of the United States

15     at 1:00 p.m.

16     APPEARANCES:

17     RANDOLPH H. BARNHOUSE, ESQ., Los Ranchos de Albuquerque,

18        N.M.; on behalf of the Petitioners.

19     LEONARD J. KOERNER, ESQ., Chief Assistant Corporation

20        Counsel, New York, N.Y.; on behalf of the

21        Respondent.

22

23

24

25

1

1   which you were denied the opportunity.

2              In this particular case, the reason we don't

3   have the taxes is because of the act of fraud as we

4   allege of the defendant.  It's a little tough --

5              CHIEF JUSTICE ROBERTS:  I'm sorry, because

6   of -- because of what?

7              MR. KOERNER:  The fraud of the defendant.

8   It's a little hard to argue when you've created the

9   situation so we can't collect that an inability to

10  collect then becomes no property.  After Pasquantino

11  this Court decided the Anza case, which I'll discuss for

12  both issues.

13             JUSTICE BREYER:  Before you get to Anza,

14  this might be a good time to ask because I don't think

15  we focused on this in Pasquantino.  But if in fact the

16  failure of a State to collect a tax is property, then

17  why isn't every corporation that files an income tax

18  return and makes two false statements automatically

19  liable for RICO?  I mean --

20             MR. KOERNER:  As long as they meet the

21  definition of --

22             JUSTICE BREYER:  Well, that would mean the

23  States have a new method, which I don't think they use,

24  a new method of collecting treble taxes from anyone who

25  makes two false statements or a false statement in two

1  income tax returns, and it would seem to me that would
2  have vast repercussions.  I mean, it might be very
3  beneficial; the States are having a deficit crisis;
4  but --
5             MR. KOERNER:  If people --
6             JUSTICE BREYER:  How, how -- why would it
7  not be --
8             MR. KOERNER:  Why would --
9             JUSTICE BREYER:  But they left -- they don't
10 have the RICO predicate, not paying your State taxes.
11 But in effect you would read into the RICO
12 predicate protecting States.
13            MR. KOERNER:  This is precisely what
14 happened in Anza.
15            JUSTICE BREYER:  That may be, but nobody
16 focused on this issue.  So -- so that's what's bothering
17 me.  What is the -- what is the stopping place?
18            MR. KOERNER:  If you're --
19            JUSTICE BREYER:  Or is there one?  And if
20 there is none, how do we reconcile this view of --
21 they're suggesting a stopping place, Anza and
22 Pasquantino to the contrary.  Right.  But they're
23 suggesting a stopping place on a matter that hasn't come
24 up.
25            MR. KOERNER:  But they're suggesting --

Official - Subject to Final Review

1        JUSTICE BREYER:  Or focused on.  It's come
2   up but not focused on.
3        MR. KOERNER:  But they're suggesting a
4   stopping place which is inconsistent with the actual
5   language of the RICO --
6        JUSTICE BREYER:  So in your view
7   California --
8        MR. KOERNER:  Well, may I --
9        JUSTICE BREYER:  -- which has a $10 billion
10  deficit, could go through, find every instance where a
11  corporation made two false statements in two tax
12  returns, one in each, and collect treble what they're
13  owed.
14       MR. KOERNER:  If there is a systematic
15  understatement under the statute, that's exactly --
16       JUSTICE BREYER:  It doesn't say systematic
17  understatement.
18       MR. KOERNER:  It says --
19       JUSTICE BREYER:  It says two --
20       MR. KOERNER:  Correct.
21       JUSTICE BREYER:  -- predicate acts.
22       MR. KOERNER:  And in these --
23       JUSTICE BREYER:  And the predicate acts are
24  a deliberate false statement.
25       MR. KOERNER:  And indeed that -- that is

Official - Subject to Final Review

1   what Congress intended.  If you look --

2             JUSTICE BREYER:  If they did, then why

3   didn't they put in not paying your State tax returns as

4   a predicate act?

5             MR. KOERNER:  Well, in fact what they put in

6   in 1978 was the Contraband Cigarette Trafficking --

7             JUSTICE BREYER:  Oh, well, that cuts against

8   you.

9             MR. KOERNER:  No.

10            JUSTICE BREYER:  Because if they put in one,

11  your theory -- they don't even need, whether they need

12  that or not.  Your theory applies to every tax, every

13  tax.

14            MR. KOERNER:  Well, the reason they put it

15  in was to increase the criminal penalties as well as

16  recognize the civil penalties.

17            JUSTICE BREYER:  No, but go back to my

18  question.

19            MR. KOERNER:  The importation -- yes.

20            JUSTICE BREYER:  My question is, forget the

21  cigarette taxes.  If I accept your argument, am I then

22  saying that California, New York, and every other State

23  that's owed money by corporations in their taxes can go

24  through, look for two tax returns that have a false

25  statement in them that were mailed in, and thereby

Official - Subject to Final Review

```
 1   collect RICO damages?
 2              MR. KOERNER:  Yes, that's correct.
 3              JUSTICE BREYER:  Well, that's a pretty
 4   far-reaching --
 5              MR. KOERNER:  Well --
 6              JUSTICE BREYER:  Do you know anybody, any
 7   court that has ever said that?
 8              MR. KOERNER:  Well, the issue hasn't been
 9   raised.  But the -- but the -- RICO has been
10   consistently interpreted by this Court in an
11   expansionist mode, and despite that Congress has not
12   truncated it except in the one area of securities
13   violation and only because they found that there were
14   ample remedies in securities law, and because they
15   thought it was inappropriate to use exclusively mail and
16   wire fraud.
17              JUSTICE BREYER:  Why would --
18              JUSTICE SCALIA:  Why should that help?
19              JUSTICE BREYER:  If Congress wanted that
20   result, why didn't they put in as a predicate act not
21   paying your income tax or not paying your State tax?
22              MR. KOERNER:  Because they had a more
23   general definition, and they wanted the broadest
24   possible interpretation.  But the Cigarette Contraband
25   Trafficking Act was put into RICO as a predicate crime.
```