UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------x
THE CITY OF NEW YORK,

                                                Plaintiff,

                -against-

ROBERT GORDON, d/b/a ALL OF OUR BUTTS;
MARCIA GORDON; JOHN DOES 1-5, being persons
who own, are employed by or are associated with ALL OF
OUR BUTTS; REGIONAL INTEGRATED LOGISTICS,
INC., d/b/a REGIONAL PARCEL SERVICES; and JOHN
DOES 6-10, being persons who own, are employed by or
are associated with Regional Integrated Logistics, Inc. d/b/a
Regional Parcel Services,

                                                Defendants.
------------------------------------------------------------------------X

Civil Action No. 12 cv 4838

**REPLY MEMORANDUM OF LAW IN SUPPORT OF MOTION OF DEFENDANTS
ROBERT GORDON d/b/a ALL OF OUR BUTTS AND MARCIA GORDON TO
<u>DISMISS THE AMENDED COMPLAINT</u>**

Defendants Robert Gordon, d/b/a All Of Our Butts and Marcia Gordon (the "Gordon Defendants") respectfully submit this Reply Memorandum Of Law in further support of their Motion To Dismiss The Amended Complaint.[1]

## ARGUMENT

### I. THE CITY FAILS TO STATE A CLAIM UNDER THE CCTA

#### A. The City Is Not Authorized to Bring a CCTA Claim Against an Indian in Indian Country

Robert Gordon d/b/a All Of Our Butts is licensed by the Seneca Nation of Indians. See, All Of Our Butts Business License, annexed to the Declaration of Adam J. Rader dated November 30, 2012 (hereinafter "Rader Declaration") as **Exhibit C.** The City has no basis or authority to conclude that All Of Our Butts is a "front." Opp. Brief at p. 12. This assertion, not alleged in the Complaint, is itself illustrative of the City's attempt to use this action as a vehicle to usurp the Seneca Nation's sovereignty and its business licensing process. Marcia Gordon has been sued in her capacity, and for her actions, as an agent of Robert Gordon d/b/a All Of Our Butts, an Indian in Indian Country and should therefore be exempt.

The City cites to inapposite and factually distinguishable cases under which <u>corporations</u> were held not to take on racial or ethnic characteristics of its owners. Opp. Brief at p. 12. However, Robert Gordon d/b/a All Of Our Butts is a <u>sole proprietorship</u> operating under a

---

[1] The Gordon Defendants expressly incorporate and reiterate herein all arguments set forth in their initial Memorandum Of Law In Support Of Motion Of Defendants Robert Gordon d/b/a All Of Our Butts and Marcia Gordon To Dismiss The Amended Complaint And In Opposition To Plaintiff's Motion For A Preliminary Injunction (hereinafter "Gordon Brief"), and state that the Gordon Defendants' failure to repeat said arguments in the instant Reply Brief does not constitute abandonment of the positions previously set forth. The Gordon Defendants also incorporate by reference and adopt any relevant arguments in support of dismissal of the Gordon Defendants that are set forth in the briefs filed by Co-Defendant Regional Integrated Logistics, Inc., d/b/a Regional Parcel Services.

Seneca Nation business license.[2] As such, All Of Our Butts retains the characteristics of its sole owner, Robert Gordon, and is therefore an "Indian in Indian Country."[3]

The City asserts that applying the "Indian in Indian Country" exemption to agents of a Native American licensed sole proprietorship would have "gutted the statute..." Opp. Brief at p. 13. However, the main thrust of the CCTA involves federal enforcement, which is more expansive than the limited authority granted to state and local governments, and encompasses criminal prosecution as well as actions against Native Americans and their businesses. Federal enforcement of the CCTA is not impacted by the limitation of state and local government's rights to interfere with Native American sovereignty and this limitation on state and local authority does not "gut" the statute.[4]

The City does not dispute that the purpose of the CCTA's limitation on state and local government actions against Indians in Indian Country was to "make sure that there is no impact

---

[2] The City cites to Baraga Products, Inc. v. Comm. Of Revenue, 971 F. Supp. 294 (W.D. Mich. 1997). However, the Baraga decision actually contradicts the City's arguments as the determination that a corporation owned by a Native American was not a tribe member was based on the fact that the corporation was organized under the laws of the state of Michigan and was not organized under tribal laws. Id. at 296-97. Moreover, the decision in Baraga Products is clearly inapplicable to a sole proprietorship. Baraga Products, Inc., 971 F. Supp. at 297 (stating "[a] sole proprietorship is clearly taxed differently from a corporation, because income of the sole proprietorship is treated as income of the sole proprietor...[t]he two are one and the same.") (emphasis supplied).

[3] A sole proprietorship is "[a] business in which one person owns all the assets, owes all the liabilities and operates in his or her personal capacity." Black's Law Dictionary (9th Ed. 2009) (emphasis supplied). "A sole proprietorship has no separate identity apart from the sole proprietor. Thus, in contrast to a corporation, a sole proprietorship has no separate existence." CJS § 4 (internal citations omitted) (emphasis supplied). As a sole proprietorship, Robert Gordon d/b/a All Of Our Butts has no separate existence from Robert Gordon, and therefore by definition it takes on the racial and ethnic characteristics of its owner, Robert Gordon, an Indian in Indian Country. See also, 21 NYCRR 2054.1(c) ("...a minority business enterprise means any business enterprise, including a sole proprietorship...that is: (i) at least fifty-one percent owned by one or more minority group members...").

[4] The City has not cited a single case in which a state or local government was permitted to bring a CCTA action against a business licensed by a federally recognized federal tribe such as the Seneca Nation. Nor has it cited any decision in which a state or local government was permitted to bring a CCTA action against agents of an Indian in Indian country. Indian Tribes' rights to absolute protection against sovereign infringements by a city government – or any governmental agency other than the federal government – are well settled. See e.g., Washington v. Confederated Tribes, 447 U.S. 134, 154 (1980). Native American sovereignty, protected by the statutory exemption granted to Indians in Indian Country, should not be cavalierly ignored as the City proposes here without citing to any legal authority that actually limits the exemption in the manner proposed by the City.

2

on tribal sovereignty." 151 Cong. Rec. H6273-04, 2005 WL 1703380 (July 21, 2005).  The City offers no other potential rationale for the exemption against prosecution of Indians in Indian Country, which as a matter of common sense and plain language was enacted to limit the ability of state and local governments to bring actions that would impact tribal sovereignty.  As the legislative purpose of this limitation is clear, the scope of the exemption must be interpreted in view of the clear statutory purpose. Cabell v. Markham, 148 F.2d 737, 739 (2d Cir. 1945) ("it is one of the surest indexes of a mature and developed jurisprudence not to make a fortress out of the dictionary; but to remember that statutes always have some purpose or object to accomplish, whose sympathetic and imaginative discovery is the surest guide to their meaning.").  The City's attempt to get around the exemption against actions against Indians in Indian Country by suing the agents of a licensed Seneca business violates the purpose of the statutory limitation – to curb state and local infringement on tribal sovereignty.  Morton v. Mancari, 471 U.S. 535, 555 (1974) (statutes providing legislative protections for Indians must be evaluated in the context of Congress' unique obligations toward Indians and furtherance of their self-government).

The City asserts that "…cigarette sales to the public on New York's Indian reservations are taxable and collection of tax does not implicate tribal sovereignty." Opp. Brief at p.3.  However, the sovereignty issues raised by the Gordon Defendants are not based on tribal sovereign immunity.  A state's right to collect tax on Native American sales of cigarettes to the non-Native public does not abrogate all Native American Treaty rights, and does not permit taxation on product that has never left the Native American stream of commerce.  Accordingly, the City's reliance on Oneida Nation of N.Y. v. Cuomo, 645 F.3d 154 (2d. Cir. 2011), is misplaced.  Although cigarette sales from Native American entities to the non-Native public are

taxable, the ultimate incidence of the taxes falls upon the non-Indian customers. Cayuga Nation of N.Y. v. Gould, 14 N.Y.3d 614, 622-23 (2010).

Oneida v. Cuomo did not involve a challenge based on Seneca Nation treaty rights. Nor did Oneida v. Cuomo address the more specific issue of whether (and if so, when) the state may require a Native American retailer located on Native American tribal territory to purchase tax stamps from a Native American wholesaler selling Native American manufactured cigarettes. Accordingly, Oneida v. Cuomo is factually distinct from the instant case.[5]

By contrast, HCI Distribution v. New York State Police, 36 Misc.3d 743 (Supr. Ct., St. Lawrence Cty. 2012), held that cigarettes lacking New York excise tax stamps and purchased from an Indian manufacturer in New York by an arm of the Winnebago Tribe of Nebraska, were not subject to seizure since no New York tax was due on said cigarettes. Id. at 749-50 (confirming that the ultimate incidence for the tax liability shall be on the consumer, and that no tax was due on the Native Manufactured cigarettes that were seized).[6]

The Gordon Defendants' arguments concerning Native American sovereignty relate to treaty rights and limitations on the City's power to impose a direct tax on Native-To-Native

---

[5] The City asserts that the Gordon Defendants' reference to the cigarettes that they sell as "'Native Manufactured'" is "vague and unsupported" and "puzzling." Opp. Brief at p. 27, n28. However, the Gordon Defendants' Amended Response To Plaintiff's First Request For Admissions ("Gordon RFA Responses"), specifically states that all cigarettes sold by All Of Our Butts during the relevant time period (May 2012) were manufactured by Native Americans and Native American Companies. See Gordon RFA Responses, annexed to the Declaration of Aaron J. Bloom, dated December 21, 2012 (submitted with the City's Opposition Brief), as **Exhibit A**. Thus, the term "Native Manufactured brands" is in no way a "puzzling" description. It is self-explanatory, clearly referring to brands manufactured by Native Americans as opposed to brands manufactured by non-Native companies, such as Marlboro or Camel. The City seeks to use the Gordon Defendants' discovery responses to buttress its opposition to the Motion To Dismiss, but neither the Amended Complaint nor the City's Opposition Brief establish or allege that the Gordon Defendants sell any cigarettes that are not Native Manufactured.

[6] The Court also held that there was no basis for New York to assert that the cigarettes in question required a New York tax stamp based on an assumption that they might ultimately wind up being shipped back into New York. Likewise, the City's assertions in the instant matter that it can act to enjoin the Gordon Defendants' behavior and sales outside of New York City because these sales may somehow wind up impacting the City "…rel[ies] on only pure speculation…" and does not support the City's attempt to extend the scope of its enforcement to possession outside of New York City and to sales to customers not residing in New York City. Id. at 749.

4

transactions relating to inventory which is subject to Seneca taxation and which has never left the Native American stream of commerce – that is, Native Manufactured cigarettes purchased by a Seneca-licensed business. The City cites to inapposite cases – factually distinct from the instant case – in an attempt to ignore the well-established statutory canons of construction and treaty interpretation which compel rejection of the City's claimed right to tax and restrain Native-To-Native transactions outside of New York City limits. "Statutes are to be construed liberally in favor of the Indians, with ambiguous provisions interpreted to their benefit." Montana v. Blackfeet Tribe, 471 U.S. 759, 766 (1985). Accordingly tribal sovereignty is subordinate only to the federal government, not to the states, and states may tax reservation Indians only if Congress has indicated its consent. See e.g., Oklahoma Tax Commission v. Chickasaw Nation, 515 U.S. 450, 458-59 (1995); Washington v. Confederated Tribes, 447 U.S. 134, 154 (1980); Bryan v. Itasca County, 426 U.S. 373, 393 (1976).

As the Supreme Court has repeatedly observed, state intrusions must be measured by examining the specific treaties and statutes that apply to a particular case. McClanahan v. Arizona State Tax Comm., 411 U.S. 164 (1973). In the instant case, the City seeks to require Seneca licensed businesses to place New York City tax stamps on Native Manufactured product, regardless of whether the product will ever be shipped into New York City. This attempt to impose a tax on an Indian Tribe member inside Indian country violates relevant treaties and sovereignty principles and goes beyond the outer limits of the relevant New York State statutes. HCI Distribution v. New York State Police, 36 Misc.3d 743 (Supr. Ct., St. Lawrence Cty. 2012); see also, Oklahoma Tax Commission v. Chickasaw Nation, 515 U.S. at 458 (state is without power to tax reservation Indians inside Indian country). Accordingly, this action, which seeks to restrain and interfere with business operations of an Indian in Indian Country who is licensed by

5

the Seneca Nation of Indians and subject to Seneca tax schemes, rules and regulations, should be dismissed.

### B. The City Does Not State a CCTA Claim Against Marcia Gordon Because It Does Not Allege That AOB Sold More Than 10,000 Cigarettes to Any City Resident in Any Single Transaction

As discussed at length in the Gordon Defendants' opening brief, for an act to violate the CCTA, it must involve a quantity in excess of 10,000 cigarettes per transaction. See Gordon Brief at p. 9-11. Despite the City's protestations, this position is supported by the language of the CCTA itself, by the Federal Regulations applicable to the CCTA, and by Judge Hurley's decision in U.S. v. Morrison, 596 F. Supp.2d 661, 686 n.27 (E.D.N.Y. 2009).

A plain reading of the statutory language of the CCTA supports the interpretation that acts violating the CCTA must involve 10,000 cigarettes or more per transaction. It flies in the face of common sense that a proscription on the possession, sale, or distribution of cigarettes exceeding a certain number would encompass the aggregation of sales over an undefined (and open-ended) period of time to an unspecified number of persons. Nonetheless, this is what the City argues that Congress intended. See Opp. Brief at p. 4-5. Such an interpretation, however, would lead to the absurd result that an individual purchaser buying one carton of untaxed cigarettes per month for personal consumption over the course of five years would subject to federal prosecution under the CCTA when that statute was designed to combat large-scale trafficking operations. Similarly, the City's interpretation would allow the federal prosecution of an individual purchasing one carton of untaxed cigarettes per week for a year. The City cannot argue with a straight face that either scenario is what Congress contemplated or intended.[7]

---

[7] Moreover, to the extent that the Court were to find the statutory language ambiguous, "[t]he rule of lenity, grounded in part on the need to give 'fair warning' of what is encompassed by a criminal statute...demands that we give this text the more narrow reading of what is susceptible." James v. U.S., 550 U.S. 192, 219 (2007) (internal citations omitted).

6

The City appears to imply that the CFR regulations apply only to recordkeeping, and in any event, argues that the regulations do not support the Gordon Defendants' interpretation of a "per transaction" requirement in the CCTA. See Opp. Brief at p. 9-10. The City is wrong. As an initial matter, the CFR regulations do not contain any statement that their application is limited to the recordkeeping context. The language of the regulations, as well as statements from their promulgating agency, further demonstrate that actions violating the CCTA are those that involve more than 10,000 cigarettes per transaction.

The Bureau of Alcohol, Tobacco, Firearms, and Explosives ("ATF"), the agency responsible for promulgating the federal regulations applicable to the CCTA, clearly intended to apply the CFR's "single transaction" language to the definition of "contraband cigarettes." Specifically, in the Federal Register, ATF declares that "Pub.L. 95-575 makes it unlawful for most persons to purchase, receive, possess, transport, ship, sell or distribute more than 60,000 cigarettes in a single transaction on which the state cigarette tax has not been paid." 945 F. Reg. 141 at 4860 (emphasis added). Significantly, because ATF is the federal agency charged with implementing the CCTA and promulgating the rules and regulations relating to same as authorized by Congress in § 2346, its interpretation of the statute is entitled to deference. See Chevron, USA, Inc. v. Natural Resources Defense Council, 467 U.S. 837 (1984).

The CFR regulations themselves likewise support the Gordon Defendants' interpretation of a "per transaction" requirement in the CCTA. The CFR regulations state that "[t]he regulations in this subpart relate to the distribution of cigarettes in excess of 60,000 in a single transaction." 27 CFR § 646.141 (emphasis added).[8] Indeed, the regulations reflect a

---

[8] The regulations have not been updated following the 2006 amendment to the CCTA that changed the relevant number of cigarettes from 60,000 to 10,000. Nevertheless, these regulations are equally applicable to the CCTA in its current form, with references to the specific number 60,000 being understood to apply similarly to the 10,000 figure.

7

logical understanding of the interaction between the definition of "contraband cigarettes," the prohibition on the sale and distribution of such cigarettes, and the recordkeeping requirements for certain cigarette sellers and distributors. There is nothing to suggest that, when promulgating these regulations, ATF would not have wanted the reporting requirements for transactions involving more than 60,000 cigarettes to align with the 60,000 cigarettes language used to define "contraband cigarettes." Rather, the desire for consistency should be assumed, and the City offers no explanation as to why ATF would have written discord into its regulations.

In a misguided attempt to bolster its position that Congress contemplated an aggregation of cigarette sales over any period of time and to any number of purchasers, the City relies heavily on an unpublished decision, City of New York v. Golden Feather Smoke Shop, Inc., No. 08-CV-3966 (CBA), 2009 WL 2612345 (E.D.N.Y. Aug. 25, 2009), and tries to discredit Judge Hurley's decision in U.S. v. Morrison, 596 F. Supp. 2d 661 (E.D.N.Y. 2009). See Opp. Brief at p. 4-6, 10-11. Golden Feather, an unpublished decision, is not binding authority on this Court, and is factually distinguishable from the instant matter. By contrast, Morrison is on point, and provides better guidance for this Court's decision.

The City argues that the Court should disregard Morrison's holding that an alleged CCTA violation must be evaluated on a "per transaction" basis because "Morrison did not even apply the requirement to each type of conduct at issue in this case...[it] imposed a 'per transaction' element only on 'sale' and 'distribution,' not on transport, shipment, purchase or possession." Opp. Brief at p. 10. As an initial matter, then, the City concedes that the Morrison holding is applicable to its allegations that Marcia Gordon "sold" or "distributed" cigarettes to New York City residents in violation of the CCTA. Because the City's Amended Complaint does not assert that Ms. Gordon "sold" or "distributed" more than 10,000 cigarettes to any New

8

York City resident in a single transaction, the City has failed to state a CCTA claim against her for such conduct.

Further, the Court has no reason to look beyond Morrison simply because the City alleges the purchase and possession of cigarettes in addition to the sale and distribution of said cigarettes. Any alleged purchase or possession of cigarettes by Marcia Gordon necessarily takes place outside of New York City (on the Allegany Reservation where the All of Our Butts business is located), and there is no injury to the City unless those specific products are being sold to New York City residents. Significantly, here – as opposed to Golden Feather – there are no allegations that any cigarettes sold by All of Our Butts other than those sold directly to New York City residents are making their way into New York City. By contrast, Golden Feather involved in-person sales taking place on the Poospatuck reservation in Long Island, many, if not most, of which were to individuals that were transporting those cigarettes to New York City and re-selling them to New York City customers. Golden Feather, 2009 WL 6212345 at *22.

## II. THE CITY FAILS TO STATE A RICO CLAIM AGAINST ROBERT GORDON

Despite the City's arguments to the contrary (Opp. Brief at 20-21), its inability to bring a civil CCTA claim against Robert Gordon precludes it from bringing a RICO claim against him under 18 U.S.C. § 1962(c). See U.S. v. Fiander, 547 F.3d 1036, 1043 (9th Cir. 2008) ("Similar to Saadey, where the conduct charged could not constitute a substantive RICO offense because it did not amount to extortion, Fiander [a Native American] cannot be charged with a substantive RICO offense based on the CCTA.").

## CONCLUSION

For the reasons detailed above and in their initial moving papers, the Gordon Defendants respectfully request the Court to dismiss the City's Amended Complaint with prejudice.

9

Dated: New York, New York
January 4, 2013

                              ANDERSON KILL & OLICK, P.C.
                              1251 Avenue of the Americas
                              New York, New York 10020
                              (212) 278-1000

By:    /s/ Adam J. Rader
        Michael A. Lacher. (ML 8229)
        Adam J. Rader (AR 3530)
        Attorneys for Defendants Robert Gordon,
        d/b/a All Of Our Butts and Marcia Gordon